IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ELIZABETH ÁLVAREZ COLÓN; BASILIO GARCÍA-GARCÍA and THE CONJUGAL PARTNERSHIP COMPOSED BY BOTH,<br><br>Plaintiffs<br><br>Vs.<br><br>DR. ARIEL BERMÚDEZ VERA AND THE CONJUGAL PARTNERSHIP COMPOSED BY HIM WITH JANE DOE; DR. ROBERT HUNTER MELLADO AND THE CONJUGAL PARTNERSHIP COMPOSED BY HIM WITH ANN JOE; PUERTO RICO HEMATOLOGY-ONCOLOGY GROUP; JOHN DOE; MARIE ROE; INSURANCE COMPANY "X"; INSURANCE COMPANY "Y"; INSURANCE COMPANY "Z",<br><br>Defendants | CIVIL NO.<br><br><br>Medical Malpractice<br><br><br>Plaintiff Demand<br>Jury Trial |

**COMPLAINT**

**TO THE HONORABLE COURT:**

Come now Plaintiffs, through the undersigned counsel, and very respectfully STATE, ALLEGE and PRAY:

**I. Nature of Action and Statute of Limitations**

1. a. This is a medical malpractice case against the Defendants, in which Plaintiffs request redress for continuous damages sustained because of Defendants' negligence in not attending adequately a medical condition of Elizabeth Alvarez Colón ("Elizabeth" or Mrs. Álvarez), causing that she now has to be under lifelong professional observation with a cardiologist to monitor her

heart's behavior, among other damages. As a result, Defendants are liable under Article 1802 and Article 1803 of the Puerto Rico Civil Code, 31 LPRA 5141, 5142, for the damages caused.

1. b. This cause of action was originally filed on January 29, 2016, as amended on November 7, 2016, with the Superior Court of Puerto Rico, Bayamón Part, Civil No. DDP 2016-0058(703). Said filing effectively tolled the applicable statute of limitations for the subject Complaint.

## II. Jurisdiction and Venue

2. This Court has jurisdiction to hear this action pursuant to 28 U.S.C. § 1332, since there is complete diversity of citizenship between the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000,000), exclusive of costs and interests.

3. Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. § 1391, since the events that gave rise to this cause of action occurred in the District of Puerto Rico.

## III. The Parties

4. Plaintiff, Elizabeth Álvarez Colón, is of legal age and a citizen of Florida.

5. Plaintiff, Basilio García-García, is of legal age and citizen of Florida.

6. Defendant Dr. Ariel Bermudez Vera ("Dr. Bermudez"), by himself and as representative of the Conjugal Party he forms with Jane Doe, is one of the physician that provided medical treatment to Elizabeth under his direct care and, therefore, is jointly liable to Plaintiffs for all of the damages caused by his own negligence. Dr. Bermudez is a citizen of the Commonwealth of Puerto Rico.

7. Defendant Dr. Robert Hunter Mellado ("Dr. Hunter"), by himself and as representative of the Conjugal Party he forms with Ann Joe, is one of the physician that provided medical treatment to Elizabeth under his direct care and, therefore, is jointly liable to Plaintiffs for all of

the damages caused by his own negligence. Dr. Hunter is a citizen of the Commonwealth of Puerto Rico.

8. Defendant Puerto Rico Hematology-Oncology Group is a medical institution dedicated to offering a variety of specialized health services in the Commonwealth of Puerto Rico. Puerto Rico Hematology-Oncology is a corporation organized under the laws of the Commonwealth of Puerto Rico, with principal place of business in Puerto Rico.

9. Insurance Company "X", Insurance Company "Y" and Insurance Company "Z", whose real names are presently unknown, issued insurance policy or policies in favor of one or more of the Defendants that covers all or part of the negligence, risks, damages, occurrences and/or events alleged in this Complaint. These Insurance Companies are directly liable to Plaintiffs for the damages claimed in this suit, under the provisions of 26 LPRA § 1003, *et seq*. Insurance Company "X", Insurance Company "Y" and Insurance Company "Z", are corporations organized under the laws of the Commonwealth of Puerto Rico, or of a state other than Florida, with principal place of business in Puerto Rico, or in a state other than Florida.

10. All parties identified in paragraphs 6 through 9 are collectively referred hereinafter as "Defendants."

### IV. Facts of the Case

11. On December 13, 2013, Elizabeth had a left breast biopsy because a suspicious mass was found. The biopsy was performed by Dr. William Ruiz Garcia. The result of the biopsy was positive for cancer and Dr. William Ruiz indicated to Mrs. Alvarez that a Medport for the chemotherapy treatment had to be placed.

12. On January 29, 2014, Elizabeth went to the operating room. When she left recovery, she came out with pain in her chest, could not swallow, could not walk and her head was covered in blood. Later, when she recovered and saw Dr. Ruiz again, she asked why she had done so badly

in having the Medport inserted and why was it placed on the left side instead of the right side, since she was supposed to have it placed on the right side. He replied in a bad way and told her that her veins were very thin and that the tube could not enter them, but that finally he was able to placed it. The area where it was placed was very painful.

      13. When Mrs. Alvarez went to take her first chemotherapy the Medport could not be used because it was bent and her oncologist, Dr. Robert Hunter, that same day, ordered x-rays to see how the Medport was doing. From the x-rays it could be seen that the tube was bent. It hurt all the time. She was given the first chemotherapy by vein. She was then referred to Dr. Ruiz for inspection of the Medport.

      14. Again, Mrs. Alvarez was sent to the operating room for the Medport to be repaired. Two weeks later she went on to take the second chemotherapy treatment at Puerto Rico Hematology-Oncology Group where Dr. Hunter has his office. Dr. Hunter, seeing that the nurses could not again give the chemotherapy to Mrs. Alvarez because the tube was bent and the liquid did not pass-through, he inserted a syringe with saline water to see if the liquid passed. Dr. Hunter tried so many times that the plaintiff began to cry from pain. Dr. Hunter indicated that the Medport did not work. At that moment Elizabeth asked him to remove the Medport because she could not stand the pain, but Dr. Hunter told her that he would leave it that way until she finished the chemotherapies treatments. Only then he would then have it removed.

      15. Every time he saw her in the office after each chemotherapy treatment, she complained of pain with Dr. Hunter but he kept quiet. She took all the chemotherapies by vein, and finished them in June of 2014. All that time she was in pain in the area where she had the Medport fitted.

      16. In June 2014, Ms. Alvarez goes to a medical appointment with Dr. Hunter who tells her that he had to refer her to a surgeon for a mastectomy. Elizabeth had heard of surgeon Ariel Bermudez and so told Dr. Hunter, who then refered Elizabeth to Dr. Bermudez for a radical

mastectomy and to remove the Medport. However, in this referral, Dr. Hunter failed to inform Dr. Bermudez that Mrs. Alvarez's Medport catheter was causing problems.

17. On July 30, 2014, Elizabeth went to Dr. Bermudez at Bayamón Medical Plaza Hospital for a radical mastectomy and removal of the Medport.

18. In November 2014, she was given 30 radiation therapies, only on the side where the tumor was. From the month of December, 2014, she began to have symptoms of fatigue, insomnia and her heart was beating too fast. She could not do any kind of physical activity and could not even walk normally without fatigue due to lack of air. From the simple fact of scrubbing, the air was lacking and her heart was pounding too much. When she bathed, she had to wait a while because she was tired and her heart was pounding too much. She did not go to the doctor and did not complained because she thought it was the reaction to the radiation therapy.

19. In February of 2015, when she attended a medical appointment with Dr. Hunter, she complained and told him that she could not stand it anymore and she was scared because her heart was always agitated. She explained how she felt.

20. Dr. Hunter immediately ordered her to make breast x-rays. When she did, she gave them to Dr. Serrano, her radiotherapist. Dr. Serrano immediately told her that she had to go to a cardiologist because on the x-rays came out that she had a fragment of a catheter in her heart. It is in February 2015 that Elizabeth learns that she had a fragment of a catheter in her heart, left there because of the combined negligence of the defendants, reason why this action, filed first with the Superior Court of Puerto Rico, Bayamón Part, Civil No. DDP 2016-0058(703), is not time barred.

21. Ms. Alvarez, annoyed and highly worried, called Dr. Ariel Bermudez and explained what had happened. When Dr. Bermudez saw the x-rays he was surprised and asked if she had had a catheterization by any chance. Mrs. Alvarez told him that she had never suffered from her heart and he told her that he knew who could solve that problem.

5

22. Dr. Bermudez referred Elizabeth to Dr. Salvador Mercado, an invasive radiologist.

23. Mrs. Álvarez visited the following month with Dr. Salvador Mercado. All this time she was worried, tired, her husband and her children worried, restless, anxious for what was happening to her. Her husband did not sleep and changed his mood since they learned that she had that catheter in her heart.

24. When Dr. Salvador Mercado saw the x-rays he told her that he would try to remove it. She went to the operating room again at Hermanos Meléndez Hospital where Dr. Salvador Mercado tried to remove the catheter fragment accessing from both legs and by the jugular at the neck without success.

25. When he was trying from the jugular, her pressure and pulse increased. She began to sweat, her hands fell numb and she began to scream that she could not stand the pain begging him to stop. She began to cry and he stopped the procedure. Then, when she was calmer, but her pulse and heart were very fast, Dr. Salvador Mercado spoke with her and told her that she had to have a CT because he could not access the catheter fragment because it was already inside the heart.

26. Under great affliction and feeling bad, she sought for a place where they could do the CT, something that her medical plan did not cover. Her family had to help her raise $500.00 to cover the CT expenses. This made her very sad and cried a lot because her family made a sacrifice for her.

27. On May 5, 2015, the CT of the heart was made. It measured approximately 10 centimeters. Elizabeth took the results to Dr. Hunter. He saw them and asked her to bring to him all the x-rays that had been made to her in the hospital. When he saw them, he told Mrs. Alvarez that it was clear that the Medport tube had broken at some point. He then referred Elizabeth to Dr. Delfin V. Vernal. Dr. Hunter called him and explained the situation.

28. Finally came June 1, when Dr. Vernal was able to remove the tube from her heart, which would never perform the same given what happened. Since then and going forward, she will have to be under lifelong professional observation with a cardiologist to monitor her heart's performance. Mrs. Alvarez had never before felt so bad, so worried, so tired, so apathic and her heart beating so quickly since the tube that was removed lodged in her heart. On occasions she thought she was going to die.

## V. Causes of Action

29. Dr. Ariel Bermudez-Vera, Dr. Robert Hunter-Mellado and Puerto Rico Hematology-Oncology Group, through its medical supervisory staff and nurses, were all individually and collectively negligent and incurred in medical malpractice for having deviated from the medical standards applicable to the profession, particularly for violating the duty to act in accordance with the generally recognized standards given the circumstances present in Elizabeth's case. Defendants seemed to have failed to provide adequate and effective treatment to Elizabeth's medical condition causing extreme pain and discomfort and that she now has to be under lifelong professional observation with a cardiologist to monitor her heart's behavior. For their combined negligence, the Defendants are jointly liable to Elizabeth and Basilio for damages under Article 1802 and Article 1803 of the Puerto Rico Civil Code.

30. Insurance Company "X", Insurance Company "Y" and Insurance Company "Z," whose real names are presently unknown, are jointly and directly liable to the Plaintiffs under the provisions of 26 LPRA § 1003, *et seq*.

## VI. Damages

31. Plaintiff Elizabeth, has suffered and will always suffer physical and mental damages for the guarded condition of her heart due to the negligence of Defendants' actions. Furthermore, she has also suffered multiple operations or procedures and hospitalizations. As a direct consequence of the negligence of the Defendants, Mrs. Álvarez suffered the following damages:

    (A) Pain in the area where she had the Medport, as a result of the aggravation of the catheter not being detected in time;

    (B) Fatigue, lack of heart adequate performance, irregular heartbeats, apprehension and discomfort for being 7 months with a piece of catheter in her heart until finally it was removed;

    (C) Medical and other expenses, as well as loss of income, in excess of $10,000.00.

    (D) Mental distress and suffering and other related damages, such as potential disability or residual limitation.

The sum of the damages identified in paragraphs (A), (B), (C) and (D) is estimated at more than $ 210,000.00.

32. Plaintiff Basilio Garcia-García Gabriel has suffered severe mental anguish because of the sufferings of his wife as a result of the facts herein alleged. These damages are estimated in an amount not less than $50,000.00.

33. The Defendants, by their combined negligence, are jointly and severally liable for damages and losses caused to the plaintiffs. Had it not been for the lack of care of the defendants, Plaintiffs' physical and mental damages would not have occurred. Pursuant to Article 1802 and 1803 of the Civil Code, 31 L.P.R.A. § 5114, §5142, the defendants are jointly and severally liable for them.

## VII. Prejudgment Interest, Attorneys Fees and Cost

34. In the event Defendants deny their negligence or liability for Elizabeth's medical treatment and the consequential damages suffered by Elizabeth and Basilio, by assuming such reckless conduct, Plaintiffs are entitled to pre-judgment interest to be computed over the amount to be recovered through this Complaint, as well as a reasonable amount of attorney's fees as permitted by law.

## VIII. Trial by Jury

35. Plaintiffs demand that the instant action be tried before a jury.

**WHEREFORE**, Plaintiffs respectfully request from this Honorable Court a judgment against Defendants, jointly and severally, for the damages sustained by Plaintiffs, as well as the award of costs, attorney's fees, interest and any other relief allowed in law or equity the Court might deem proper, regardless of whether said remedy was herein claimed or not.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico, this 14th day of November 2017.

*s/ Humberto Guzmán-Rodríguez*
**HUMBERTO GUZMÁN-RODRÍGUEZ**
USDC-PR 128308
PMB 733
1353 Ave Luis Vigoreaux
Guaynabo, PR 00966
Tel: (787) 767-7502
Fax: (787) 200-7399
hguzman@grllaw.net